**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Andrew MAXWELL, not individually but as Trustee of the Estate of Pyramid Industries, Inc., et al., Defendants–Appellees.**

**No. 97–3108.**

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1998.

Decided Oct. 2, 1998.

Rehearing Denied Nov. 25, 1998.

Thomas P. Walsh, Office of U.S. Atty., Civil Division, Chicago, IL, William Kanter, Sandra Wien Simon (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, for United States.

Timothy J. McGonegle, Law Offices of Andrew J. Maxwell, Chicago, IL, for Andrew J. Maxwell.

Robert C. Samko (argued), Chicago, IL, for All American Corp.

Peter G. Swan, Emalfarb, Swan & Bain, Highland Park, IL, for Gerson Electric Construction Co.

Kurt A. Muller, Chicago, IL, for Lazzaro Cos., Inc.

Before POSNER, Chief Judge, and FLAUM and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The bankruptcy laws generally permit a creditor to offset, on a dollar-for-dollar basis, a debt it owes to the bankrupt party against a pre-commencement debt that the bankrupt owed to the creditor. See 11 U.S.C. § 553(a). There are circumstances under which setoff will be denied—fraud, collusion, and the like—but nothing in the statute suggests that the simple fact that the creditor is the United States is one of those circumstances. In this case, however, both the bankruptcy court and the district court effectively created a new exception to the right of setoff in bankruptcy, when they ruled that the "pervasive nature" of the federal government limited the right of one federal agency to set off its debts owed to a bankrupt against the bankrupt's debts owed to another federal agency. No such offset would be permitted, under the lower courts' rule, unless the only affected parties would be the debtor and the federal government.

While there may be particular cases in which federal interagency setoff should be denied (although we decline here to speculate about which cases might fall within that set), we can find no authority in the Bankruptcy Code or other law for a new across-the-board "pervasive nature" or "federal interagency" exception to the right of setoff. Furthermore, we find nothing in the record before us that would justify denial of setoff in this case. We therefore reverse the district court's denial of setoff to the United States.

## I

In 1984, the U.S. Small Business Administration ("SBA") loaned Pyramid Industries ("Pyramid") $310,000. Smaller loans followed in 1988 and 1989. In 1987, the U.S. Navy contracted with Pyramid to do construction work at the Glenview Naval Air Station in Glenview, Illinois. Pyramid provided the Navy with performance and payment surety bonds, as required by the Miller Act, 40 U.S.C. § 270a. There is no evidence that the Navy did anything to confirm that Pyramid's sureties were legitimate or that they had the resources to cover Pyramid's obligations in the event Pyramid failed to perform on its contract with the Navy or failed to pay any subcontractors it might hire. Construction began shortly after the Navy-Pyramid contract was signed, with Pyramid subcontracting some of the work to All American Corporation ("All American") and Gerson Electric Company ("Gerson").

Two years later, Pyramid filed for bankruptcy under Chapter 11 of the Bankruptcy Code; some time later, the case was converted to a Chapter 7 proceeding. Only then did the Navy and Pyramid's subcontractors, including All American and Gerson, learn that Pyramid's performance and payment bonds were worthless. One of the bondsigners had gone bankrupt in June 1990 and the other disappeared (apparently having lied about his assets on the bond form). Pyramid had done a good job of fooling the Navy, or the Navy had done a poor job of confirming the quality of Pyramid's performance and payment bonds, or both. For the sum of $51,050, the Navy settled its contractual obligations for work performed by or through Pyramid with the bankruptcy trustee, Andrew Maxwell, on February 27, 1990.

As is almost definitionally the case in bankruptcies, there were more hands outstretched for the $51,050 than there were dollars to go around. Among them was the SBA, which held secured claims against Pyramid totaling $490,574.88, which represented amounts due on the 1984, 1988, and 1989 loans. All American had an unsecured claim for $54,817.71, and Gerson had a claim (which it argued was secured, an issue the lower courts did not address) for $95,208.50. A number of other claimants were also in the picture, but they do not figure in this appeal.

In August 1993, the United States filed a complaint—including a setoff claim—to determine the SBA's rights and priority in the $51,050, naming as defendants Maxwell and Pyramid's subcontractors on the Navy job, including All American and Gerson. The government followed up with a motion for summary judgment, and All American and Gerson responded with answers denying the SBA's right to offset its claim and asserting equitable liens against the $51,050. Maxwell filed his own answer, in which he took no position on the merits of any of the other parties' claims, but vigorously defended his right to compensation and reimbursement for his work as trustee.

On July 22, 1994, the bankruptcy court denied the government's motion for summary judgment against All American and Gerson. After determining that creditors with setoff rights have priority over holders of equitable liens, and that lienholders in turn have priority over secured creditors, the bankruptcy court rejected the government's claim that the SBA was entitled to the Navy's payment to Pyramid's estate as a setoff. The court held that despite the priority that a setoff creditor normally would enjoy, the setoff provision of the Bankruptcy Code, 11 U.S.C. § 553, forbids setoff between agencies of the federal government when the debtor is a bankrupt, because federal agencies are separate entities under the terms of §§ 101 and 553 and therefore lack the mutuality necessary for setoff to apply. In the alternative, the bankruptcy court, relying on its equitable power to grant or deny setoff, found that public policy favors denial of setoff between agencies of the United States and a bankrupt debtor, both because setoff undermines the goal of treating similarly situated creditors alike, and because the "pervasive nature" of the federal government unacceptably amplifies the effects of setoff.

After its motion to reconsider was rejected by the bankruptcy court, the United States appealed to the district court, which affirmed the bankruptcy court, but only on the lower court's public policy rationale. The district court rejected the bankruptcy court's conclusion that federal agencies are separate entities for purposes of §§ 101 and 553 of the

Bankruptcy Code, but it agreed with the bankruptcy court that equitable considerations supported a denial of setoff in this case. Like the bankruptcy court, the district court identified three such factors that weighed in favor of that outcome. First, the court noted that equal treatment of similarly situated parties is a basic principle of bankruptcy law. Second, the district court agreed with the bankruptcy court that setoff makes it impossible to provide equal treatment to creditors, since setoff gives some creditors (those "lucky" enough to have a qualifying pre-existing debt to the bankrupt) an advantage over others—leaving the non-setoff creditors with a smaller pie to divide among themselves. Third, adopting the bankruptcy court's terminology, the district court concluded that the "pervasive nature" of the United States' involvement in business means that the federal government frequently moves to the head of the creditor queue, courtesy of its exceptionally frequent access to setoff. As a result, other creditors who are "innocent third parties" often will be left with a leaner debtor to devour. The district court ruled that the bankruptcy court did not abuse its equitable discretion to deny setoff under these circumstances.

## II

■ The Bankruptcy Code neither expands nor constricts the common law right of setoff. Rather, it preserves, with exceptions not relevant here, whatever right exists outside bankruptcy. 11 U.S.C. § 553(a) ("this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor ... against a claim of such creditor against the debtor"); *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138–39 (2d Cir.1998). Outside of bankruptcy, the federal government is considered to be a single-entity that is entitled to set off one agency's debt to a party against that party's debt to another agency. See *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539–40, 105 Ct.Cl. 824, 66 S.Ct. 729, 90 L.Ed. 835 (1946); *In re Turner*, 84 F.3d 1294, 1296 (10th Cir.1996) (*en banc*). Federal courts of appeals that have reached the issue have applied the same single-entity rule in bankruptcy proceedings. See *In re Hal*, 122 F.3d 851, 853 (9th Cir.1997); *In re Turner*, 84 F.3d at 1296–97; see also *In re Chateaugay Corp.*, 94 F.3d 772, 778 (2d Cir.1996).

■ Neither the Bankruptcy Code nor the law outside of bankruptcy recognizes an exception to setoff precluding exercise of the right either by "pervasive" creditors with many debts held by many debtors, or by creditors who will recover more in bankruptcy than other creditors because they happen to owe money to their bankrupt debtors. The first exception is the sort of rule that only Congress can create. Whatever equitable discretion the bankruptcy courts may enjoy when considering the right of setoff, it does not extend to the blanket abolition of the right for whole classes of creditors to bankrupts—here, all federal agencies and, apparently, all "pervasive" creditors—especially in the face of congressional action to preserve that right. See 11 U.S.C. § 553. The second is no exception at all, since an exception that precludes operation of a statute except in cases in which it is irrelevant, is, for all practical purposes, a repeal. "The argument that setoff should be denied to avoid the inequity of preferential treatment is an argument against the very concept of setoff, not an argument against its application to the facts of this case." *In re Whimsy, Inc.*, 221 B.R. 69, 75 (S.D.N.Y.1998).

The only accepted equitable principle relied on by the courts below is the goal in bankruptcy of equal treatment for similarly situated parties. This principle is unavailing here, however, since the United States is not in the same boat with All American and Gerson. It is a debtor of Pyramid's estate. See also *SEC v. Elliott*, 953 F.2d 1560, 1573 (11th Cir.1992). Congress recognized, and added value to, that important difference in situation when it enacted § 553 to protect the interest of debtor-creditors through setoff.

■ There may be grounds on which the federal government could be denied its right to setoff in a particular case, see, *e.g., Marre v. United States*, 117 F.3d 297, 303 n. 7 (5th Cir.1997), but there is nothing in the record here to support such a judgment. The only possible wrongdoing by the government involved the Navy's allegedly sloppy supervi-

sion of Pyramid's selection of sureties. This issue was not raised below in the appellees' arguments against setoff, and is of no consequence regardless, since even if the United States were negligent, it owed no duty to All American and Gerson. See, *e.g., Automatic Sprinkler Corp. v. Darla Environmental Specialists Inc.*, 53 F.3d 181, 182 (7th Cir. 1995) ("Absence of a solvent surety does not authorize a claim against the United States. '[W]hen a prime contractor on a federal construction project fails to obtain a Miller Act payment bond and then defaults without paying his subcontractors ... the hapless subcontractor, not the United States,' is left holding the bag."), quoting *Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287, 1288 (7th Cir.1984); *Hardaway Co. v. United States Army Corps of Eng'rs*, 980 F.2d 1415, 1417 (11th Cir.1993) (negligent failure to investigate Miller Act sureties does not state a claim against the United States).

The government of the United States suffers no special handicap under § 553 of the Bankruptcy Code. Indeed, it seems to us that such a rule would be inconsistent with the overall tenor of the Supreme Court's decision in *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 229, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996), which held that bankruptcy courts could not, in the name of equitable subordination, categorically subordinate certain claims, because such an act would intrude on the legislative function. Therefore, the SBA was entitled set off the Navy's debt to Pyramid's estate against the estate's debt to the SBA. We REVERSE the judgment of the district court and remand for further proceedings consistent with this opinion.