**In re Brian Lee SHORTT and Traci Kaye Shortt, Debtors.**

**No. 01–42418–BJH–13.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

May 17, 2002.

Donna K. Webb, Assistant U.S. Attorney, Fort Worth, TX, for United States, Army & Air Force Exchange Service.

Behrooz Vida, Venable & Vida, Bedford, TX, for debtors.

### MEMORANDUM OPINION

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court is the Motion of United States of America to Modify Stay Nunc Pro Tunc to Authorize Set Off (the "Motion"). The Motion was filed by the United States on behalf of the Army and Air Force Exchange Service ("AAFES"). Brian Lee Shortt ("Shortt") and Traci Kaye Shortt ("Mrs. Shortt") (collectively, the "Debtors") have filed a response in opposition to the Motion. After a hearing on the Motion, the Court took the matter under advisement and directed the parties to submit briefs on the issues. The last of those briefs was filed on March 21, 2002.

To decide the Motion, the Court must consider five issues. First, whether the Debtors could compel the Internal Revenue Service ("IRS") or AAFES to pay the 2000 tax refund to them pursuant to section 542(b) of the Bankruptcy Code. Second, whether AAFES has a right outside of bankruptcy to setoff its debt against the Debtors' 2000 tax refund. Third, whether AAFES acts in a distinct private capacity when it sells goods on credit to military personnel and charges them interest and fees for that service such that AAFES and the IRS should not be treated as a single governmental unit for purposes of setoff. Fourth, whether section 522(c) of the Bankruptcy Code, which protects exempt property from liability on prepetition debt, also protects that exempt property from setoff under section 553 of the Bankruptcy Code. Finally, if AAFES had a valid right to setoff which it exercised in violation of the automatic stay, whether the Court should grant relief from stay nunc pro tunc and allow AAFES to keep the monies it set off in light of its six-month delay in filing the Motion.

For the reasons explained below, the Court concludes that (i) the Debtors could not compel the IRS or AAFES to pay the 2000 tax refund to them if AAFES has a valid non-bankruptcy right of setoff; (ii) AAFES has a valid non-bankruptcy right of setoff which section 553 of the Bankruptcy Code preserves; (iii) AAFES and the IRS should be treated as a single governmental unit for purposes of setoff; (iv) while AAFES may be prohibited from exercising its right to setoff against exempt property, the Debtors' interest in the 2000 tax refund (which may then be claimed as exempt) must be determined after allowing for a proper setoff in accordance with section 542(b) of the Bankrupt-

cy Code; and (v) notwithstanding its delay in seeking relief from the automatic stay, the stay will be modified nunc pro tunc to validate AAFES's setoff of the Debtors' 2000 tax refund against the Debt.

## I. Factual Background

In 1993, Mrs. Shortt opened a Deferred Payment Program ("DPP") account (the "Account") with AAFES. The DPP is an in-house credit plan that provides military personnel and authorized family members affordable credit at AAFES's worldwide facilities. On August 19, 1996, the Account became delinquent. On September 18, 1998, AAFES sent a Notice of Intent to Offset to Collect Delinquent Debt (the "Notice Letter") to Mrs. Shortt at a Jacksonville, North Carolina address. *See* AAFES Exhibit 2. The Notice Letter advised Mrs. Shortt that a past due debt in the amount of $4,531.59 (the "Debt") was owing to AAFES and that future income tax refunds were subject to offset. *See id.* Debra Hill, a paralegal in the general counsel's office of AAFES, testified without contradiction that the Notice Letter was sent to the last known address AAFES had for Mrs. Shortt. On September 18, 1998, however, the Debtors lived in North Richland Hills, Texas. On October 2, 2000, pursuant to 31 U.S.C. § 3720A, AAFES placed the Debt in the Treasury Offset Program.

On April 2, 2001, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code. On April 27, 2001, the Debtors filed (i) their Schedule F listing AAFES as an unsecured creditor in the amount of $3,859.00, (ii) their amended mailing matrix listing AAFES as a creditor, and (iii) their Schedule C listing the Debtors' 2000 tax refund in the amount of $1,608.00 as an asset and claiming it as exempt pursuant to 11 U.S.C. § 522(d)(5). No party-in-in-terest, including AAFES, objected to the Debtors' exemptions.

It appears that various offices of AAFES received notice of the Debtors' bankruptcy at different times, but did little to communicate with each other. At least one office of AAFES received notice of the Debtors' bankruptcy on or about April 27, 2001 when the Debtors' schedules and amended mailing matrix were filed. While Debra Hill agreed that the address listed on the schedules and matrix was a correct one for AAFES, she testified that she thought it was just a billing address—*i.e.*, an address where customer payments were sent. According to Ms. Hill, the Debtors' bankruptcy information should have been sent to the Dallas office of AAFES. In fact, the Notice Letter (which the Debtors claim never to have received) states that bankruptcy information must be sent to:

Army & Air Force Exchange Service
Attn: FA–F/C–CA
P.O. Box 650038
Dallas, TX 75265–0038

On June 1, 2001, counsel for the Debtors contacted AAFES by telephone and orally notified it that the Shortts had filed bankruptcy. Ms. Hill testified that this phone call was received by AAFES's customer service department. The customer service department then called the general counsel's office and notified it that a bankruptcy petition had been filed. Ms. Hill testified that a representative of the general counsel's office attempted to call counsel for the Debtors back (so that AAFES could obtain the relevant bankruptcy information), but that this phone call was never returned. In fact, AAFES contends that it did not receive the relevant bankruptcy information until September 5, 2001, when it received another call from Debtors counsel's office providing the bankruptcy information and requesting the 2000 tax refund.

Despite being telephonically notified of the pending bankruptcy, on either June 1, 2001 (according to the testimony of Debra Hill) or June 8, 2001 (according to AAFES's responses to the Debtors' interrogatories # 6 and # 8), at the request of AAFES and pursuant to the Treasury Offset Program, the IRS withheld the Debtors' 2000 tax refund in the amount of $2,108.15 and paid those monies to AAFES in partial satisfaction of the Debt. Debra Hill testified that AAFES could not have stopped the offset when they received telephonic notice of the bankruptcy on June 1, 2001 because once the Debt had been certified, the offset could not be stopped. She further testified that "if we take it [a tax refund] inadvertently, or if we take it and it's wrong, we refund the money back because once we certify it, we can't reverse it."

When the IRS withheld the 2000 tax refund from the Debtors in June, 2001 and then paid those monies to AAFES, AAFES had not sought relief from the automatic stay. AAFES filed the Motion on December 13, 2001 and sought nunc pro tunc authority to setoff the Debt against the 2000 tax refund.

## II. Legal Analysis

### A. Jurisdiction

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157, 1334. The Motion is a core proceeding.

### B. Can the Debtors compel payment of the 2000 tax refund?

While the Debtors make much of the fact that AAFES waited some six months to file the Motion, of equal interest and perhaps more legal significance is the fact that the Debtors have not sought to compel the payment of the 2000 tax refund to them since their Chapter 13 case was filed over a year ago. When asked about this at the hearing, counsel for Debtors explained that he delayed initially because he was waiting for the objection period to run on the Debtors' claimed exemptions. However, it appears there is an additional explanation.

Under section 542(b) of the Bankruptcy Code, the Debtors cannot compel the payment of the debt owed to them by the IRS—*i.e.,* the 2000 tax refund, if AAFES has a valid right of setoff against that tax refund. Section 542(b) provides that "an entity that owes a debt that is property of the estate and that is matured ... shall pay such debt to ... the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."* 11 U.S.C. § 542(b)(emphasis added). The courts and commentators have construed this language to mean what it says. *See, e.g., Stephenson v. Salisbury (In re Corland Corp.),* 967 F.2d 1069 (5th Cir.1992); 5 *Collier on Bankruptcy* ¶ 542.03, at 542–15 (Lawrence P. King ed., 15th ed.1992).

In general, a debtor's claim to a tax refund is property of the estate. *See Internal Revenue Serv. v. Luongo (In re Luongo),* 259 F.3d 323, 335 (5th Cir.2001). However, recognizing that the IRS has the right to offset unpaid tax liabilities owed to it against refunds owing to a taxpayer under 26 U.S.C. § 6402(a), the *Luongo* court explained that unless there is a net amount owing after offset, there is no actual tax refund to become property of the estate in a debtor's bankruptcy case. Specifically, the Fifth Circuit held that

[b]ecause the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was not entitled to a refund and the tax refund did not become property of the estate. Absent an interest in the estate to the refund, it

could not properly be exempted by the debtor under § 522.

*Luongo,* 259 F.3d at 335. Thus, the Fifth Circuit makes a distinction between a *claim* to a tax refund and an actual refund. A claim to a tax refund is property of the estate—*i.e.,* a contingent right to payment. However, for that contingent right to ripen into an actual right to payment, there must be monies still owing to the debtor's estate after offset has occurred. If there are no monies owing after offset, there is no actual refund to be paid to the estate—*i.e.,* "the tax refund did not become property of the estate," *Luongo,* 259 F.3d at 335, and there is no interest in property to be claimed as exempt.

Thus, if AAFES has a valid right of setoff under section 553 of the Bankruptcy Code, the Debtors' *claim* to a tax refund is property of the estate but their interest in an actual tax refund (or their right to payment) is limited to that amount in excess of the Debt. Because the Debt [1] is in excess of the amount of the 2000 tax refund, if AAFES has a valid right of setoff, the Debtors have no interest in the 2000 tax refund—*i.e.,* there is no net refund to become property of the estate that can be exempted under section 522 of the Bankruptcy Code; and the Debtors could not compel the payment of the 2000 tax refund to them under section 542(b).

## C. Does AAFES possess a right to setoff?

■ Setoff is governed by section 553 of the Bankruptcy Code which provides:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such a creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a). Courts have construed the language of section 553(a) to be "permissive in nature, rather than mandatory." *Alexander v. Comm'n, Internal Revenue Serv. (In re Alexander),* 225 B.R. 145, 147 (Bankr.W.D.Ky.1998) (citing *Cumberland Glass Mfg. Co. v. De Witt,* 237 U.S. 447, 455, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); *Internal Revenue Serv. v. Norton,* 717 F.2d 767, 772 (3rd Cir.1983)). Application of section 553(a), "when properly invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equity." *In re Pace,* 257 B.R. 918, 919 (Bankr.W.D.Mo.); *Alexander,* 225 B.R. at 147 (citing *Norton,* 717 F.2d at 772) (quoting 4 *Collier on Bankruptcy* ¶ 553.02, at 553–11 (Lawrence P. King ed., 15th ed.1992)).

■ Although the Bankruptcy Code does not create a federal right of setoff, if a party possesses a setoff right outside of bankruptcy, section 553(a) preserves that right if certain conditions are met. *See Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *Luongo,* 259 F.3d at 336. Thus, the threshold question is whether AAFES has a right of setoff outside of bankruptcy. AAFES contends that it does pursuant to

---

1. In the Notice Letter, the amount shown to be owing to AAFES was $4,531.59 plus interest, penalties and other charges. In their Statement of Financial Affairs the Debtors show a prior setoff by AAFES against their 1999 tax refund, but show an undisputed debt of $3,859.00 still owing to AAFES on Sched-

ule C. AAFES filed a second proof of claim on September 28, 2001 in the amount of $3,579.08. Although the record is unclear with respect to the precise amount owed to AAFES, based upon the Debtors' admission in Schedule C, the amount owing to AAFES is in excess of the 2000 tax refund.

the so-called tax intercept program, codified as 31 U.S.C. § 3720A and 26 U.S.C. § 6402(d).[2]

In *Aetna Casualty & Surety Co. v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 94 F.3d 772, 778–79 (2d Cir.1996) the Second Circuit explained that "[s]ection 6402(d) authorizes the Secretary of the Treasury to set off a tax refund against the taxpayer's debt to another Federal agency. Section 3720A provides the procedural framework for that setoff." *Id.* Section 3720A requires the federal agency to notify a debtor before submitting a claim for setoff to the Secretary of the Treasury. *See* 31 U.S.C. § 3720A (a)–(b); *see also Gerrard v. United States Office of Educ.,* 656 F.Supp. 570, 575 (N.D.Cal. 1987).

Here, the Debtors contend that setoff is not appropriate because they did not receive such a notice from AAFES. As noted previously, the Notice Letter was sent to an address in North Carolina while the Debtors were living in Texas. AAFES contends that it sent the Notice Letter to the last address it had for the Debtors and that this notice is legally sufficient, notwithstanding the fact that the Debtors

claim not to have received it. The Debtors disagree.

Section 3720A does not specify that a particular form of notice must be sent. *See* 31 U.S.C. § 3720A(b); *Gerrard,* 656 F.Supp. at 575. However, due process requires "notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "The mail is generally held to be an adequate means of providing notice under this standard." *See Gerrard,* 656 F.Supp. at 575 (citing *Greene v. Lindsey,* 456 U.S. 444, 455, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982); *Mullane,* 339 U.S. at 319, 70 S.Ct. 652). Where the government took reasonable steps to notify the debtor, the fact that the debtor did not actually receive the notice is immaterial. *Id.; see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (while recognizing that some notices were "undeliverable," the Court found that due process was satisfied when a "fully descriptive notice is sent via first-class mail to each class member"); *Schroeder v. City*

---

**2.** Section 6402(d) provides in relevant part
(d) Collection of debts owed to Federal agencies.—
(1) In general.—Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt ... to such agency, the Secretary shall—
(A) reduce the amount of any overpayment payable to such person by the amount of such debt;
(B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and
(C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt ...
Section 3720A provides in relevant part:

(a) Any Federal agency that is owed by a person a past-due, legally enforceable debt (including debt administered by a third party acting as an agent for the Federal Government) shall, and any agency subject to section 9 of the Act of May 18, 1933 (16 U.S.C. 831h), owed such a debt may, in accordance with regulations issued pursuant to subsections (b) and (d), notify the Secretary of the Treasury at least once each year of the amount of such debt. (b) No Federal agency may take action pursuant to subsection (a) with respect to any debt until such agency—
(1) notifies the person incurring such debt that such agency proposes to take action pursuant to such paragraph with respect to such debt ...

*of New York,* 371 U.S. 208, 214, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (holding that the city could have discharged its constitutional obligation to make a good faith effort to give personal notice by "the mailing of a single letter.").

■ Here, Debra Hill testified that AAFES followed its normal procedures and sent the Notice Letter to the Debtors at their last known address. AAFES had no way of knowing that the Debtors had moved to Texas. The Debtors do not contend that they advised AAFES of their change of address; they only contend that they did not get the Notice Letter. The primary purpose of the notice under the tax intercept program is to give the Debtors the opportunity to dispute the validity of the Debt before setoff can occur. Here, the Debtors do not dispute the Debt. In fact, they admit that they owed AAFES $3,859.00 on the petition date. *See* Schedule F. Moreover, in response to question 13 on their Statement of Financial Affairs, the Debtors disclose a prior setoff by AAFES against their 1999 tax refund.

Under these circumstances, the Court finds that AAFES took reasonable steps to notify the Debtors of its intent to place the Debt in the Treasury Offset Program and to seek a setoff of future tax refunds. Thus, the Court concludes that AAFES complied with the notice provision of section 3720A.

### D. Are AAFES and the IRS a single governmental unit for purposes of setoff?

■ To establish a valid right to setoff under section 553 of the Bankruptcy Code, AAFES must prove: (i) a debt owed to the debtor which arose before the commencement of the bankruptcy case; (ii) a claim against the debtor which arose before the commencement of the bankruptcy case; and (iii) that the debt and claim are mutual obligations. *See* 11 U.S.C. § 553(a); *see also Luongo,* 259 F.3d at 334; *Braniff Airways, Inc. v. Exxon Co.,* 814 F.2d 1030, 1035 (5th Cir.1987); *United States v. Jones (In re Jones),* 230 B.R. 875, 878 (M.D.Ala.1999); *Runnels v. Internal Revenue Serv. (In re Runnels),* 134 B.R. 562, 564 (Bankr.E.D.Tex.1991).

Here, there is no dispute over the first two elements—the 2000 tax refund and the Debt both arose before the Debtors filed their Chapter 13 case. However, there is a disagreement over whether the tax refund owed to the Shortts by the IRS and the Debt owed by the Shortts to AAFES are mutual obligations. In short (no pun intended), are AAFES and the IRS the same entity for purposes of setoff under section 553 of the Bankruptcy Code?

■ As the Debtors concede, the general rule is that all agencies of the federal government are treated as a single entity for purposes of setoff. *See, e.g., United States v. Maxwell,* 157 F.3d 1099, 1102 (7th Cir.1998); *HAL, Inc. v. United States (In re HAL, Inc.),* 122 F.3d 851, 853 (9th Cir.1997); *Turner v. SBA (In re Turner),* 84 F.3d 1294, 1299 (10th Cir.1996). Thus, the government may setoff funds owed by one agency to collect debts owed to other agencies of the government. *See, e.g., Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 90 L.Ed. 835, 105 Ct.Cl. 824 (1946); *In re Young,* 144 B.R. 45, 46 (Bankr.N.D.Tex.1992); *In re Sound Emporium, Inc.,* 70 B.R. 22, 24 (W.D.Tex.1987) (allowing a setoff between the Army's debt to the debtor and the IRS's claim against the debtor). When faced with the issue, courts of appeal "have applied the same single-entity rule in bankruptcy cases," *United States v. Maxwell,* 157 F.3d at 1102, and have held that "for purposes of setoff under § 553, the agencies of the United States constitute a

single 'governmental unit ...,'" *HAL, Inc.*, 122 F.3d at 853.

■ A recognized exception to the general rule arises when a federal agency acts in a "distinctive private capacity." *See HAL, Inc.*, 122 F.3d at 853. Here, the Debtors contend, without explanation or authority, that "AAFES acts in a distinctive private capacity and not as a governmental agency when it sells goods on credit to the military personnel and charges them interest and fees for the service. This is not a governmental function but a distinctly private function." *See* Debtors' Brief at p. 4. Needless to say, AAFES disagrees.

Few courts have considered whether AAFES and other federal agencies should be considered as a single entity for purposes of setoff. Although not directly on point, in *Honeycutt v. Long*, 861 F.2d 1346, 1349 n. 3 (5th Cir.1988), the Fifth Circuit defined AAFES as a "Nonappropriated Fund Instrumentality of the United States operating under the Department of Defense" as directed by members of the Army and Air Force. Another court has held that AAFES is an agency of the United States within the scope of the Administrative Procedure Act, noting that "an express or implied contract with the AAFES is construed to be an express or implied contract with the United States ... any judgment or settlement arising out of an express or implied contract with the AAFES is to be paid by the United States from funds appropriated from its Treasury ..." *See W.B. Fishburn Cleaners, Inc. v. Army & Air Force Exch. Serv.*, 374 F.Supp. 162, 164–65 (N.D.Tex.1974). The one court that has specifically held that AAFES and the IRS should be considered as one entity for setoff purposes did so without any analysis. *See Hanssen v. DPP/AAFES (In re Hanssen)*, 203 B.R. 149, 150 (Bankr.E.D.Ark.1996) (stating only that "this Court will follow the long line of authority which establishes that, for setoff purposes, mutuality exists although distinct governmental entities are the creditors").

None of these cases specifically addresses the Debtors' contention—*i.e.*, that AAFES acts in a "distinctive private capacity" when it sells goods to military personnel and their families, thus triggering an exception to the general rule. The Debtors and AAFES agree that AAFES operates military exchanges at which military personnel and their families may purchase goods. The Supreme Court explained the role of military exchanges in *Standard Oil Co. of Cal. v. Johnson*, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942) and stated that "[t]he object of the exchanges is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges." *Id.* at 484–85, 62 S.Ct. 1168. The Court further found that profits from exchange transactions "do not go to individuals. They are used to improve the solders' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops." *Id.* at 485, 62 S.Ct. 1168. The Supreme Court concluded that the exchanges were "arms of the government ... essential for the performance of governmental functions." *Id.*

■ Based upon the Supreme Court's analysis of military exchanges in *Johnson*, this Court concludes that AAFES is not acting in a distinctive private capacity but is acting as an agency of the government to fulfill a government function. The fact that AAFES offers credit to military personnel for their purchases and charges them interest for this service does not alter the nature and purpose of the mili-

tary exchange, it simply makes it easier for military personnel to purchase goods. Thus, the general rule applies and AAFES and the IRS shall be considered a single entity for purposes of setoff under section 553 of the Bankruptcy Code.

### E. May AAFES setoff against exempt assets?

The Debtors have claimed a portion of the 2000 tax refund as exempt under section 522(d)(5) of the Bankruptcy Code. *See* Schedule C (listing the 2000 tax refund as an asset and claiming $1,608.00 as exempt). Relying on the majority view that the right of setoff under section 553 yields to the debtor's right to exempt and protect assets under section 522, *see, e.g., In re Pace*, 257 B.R. at 920; *In re Alexander*, 225 B.R. at 147 (listing cases and siding with the majority view that exempt property may not be the subject of setoff), *aff'd*, 245 B.R. 280 (W.D.Ky.1999), the Debtors contend that AAFES cannot setoff against the 2000 tax refund which became exempt property when no one, including AAFES, objected to their claimed exemptions. *See* 11 U.S.C. § 522(*l*) ("Unless a party in interest objects, the property claimed exempt on such list is exempt."); *Taylor v. Freeland*, 503 U.S. 638, 643, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) ("[u]nless a party in interest objects, the property claimed as exempt ... is exempt.").

■ Generally, exempt property is not liable for prepetition debts unless the debt falls within one of the exceptions provided in section 522(c). *See In re Bourne*, 262 B.R. 745, 750 (Bankr.E.D.Tenn.2001). AAFES concedes that its setoff rights do not fall within any one of the section 522(c) exceptions. However, AAFES contends that its right to setoff under section 553 overrides the Debtors' claim of exemption under section 522(c).

■ While the courts are split on this issue—*i.e.*, does section 522(c) immunize exempt property from setoff, and the Fifth Circuit has specifically left the question open, *see Luongo*, 259 F.3d at 336 ("[b]ecause we find Appellant could not exempt the [tax] overpayment under § 522, we leave open the question of whether § 522(c) immunizes exempt property from setoff"), the Court does not have to reach this issue. Although the *Luongo* court was faced with setoff under 26 U.S.C. § 6402(a) and this Court is faced with setoff under 26 U.S.C. § 6402(d), the Fifth Circuit's analysis there is controlling. Because this Court has concluded that AAFES has a valid right of setoff, and because the amount of the Debt exceeds the amount of the 2000 tax refund, the Debtors are "not entitled to a refund and the tax refund did not become property of the estate. Absent an interest in the estate to the refund, it could not properly be exempted by the debtor under § 522." *Luongo*, 259 F.3d at 335. Thus, while the Debtors claimed the 2000 tax refund as exempt, they were not legally entitled to any refund and their attempt to exempt it is of no legal consequence.[3]

---

3. As explained in *In re Bourne*, 262 B.R. 745 (Bankr.E.D.Tenn.2001), the purported inconsistency among section 522(c) (which the Debtors contend is controlling here), section 542(b) (which the Debtors contend is irrelevant here), and section 553 can be reconciled as follows:

Section 542(b)'s offset exception to the requirement that a debt owed to the estate must be paid to the trustee is consistent with the offset preservation provision of § 553. Furthermore, notwithstanding their apparent conflict, both of these provisions can be reconciled with § 522(c)'s exemption protection language. Once a right of offset preserved by § 553 has been established in a debt owed to the estate, a debtor may claim an exemption only in the bal-

**F. May AAFES setoff the balance of the tax refund, notwithstanding its delay?**

█ Under section 362(a)(7) of the Bankruptcy Code, the commencement of the Debtors' Chapter 13 case operated to stay "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Thus, when the IRS withheld the Debtors' 2000 tax refund and paid the monies to AAFES, the automatic stay was violated. The Debtors maintain that because of this violation, AAFES's right of setoff should be denied.

The courts which have considered this issue have disagreed as to whether the right of setoff should be denied to a creditor who has violated the automatic stay. *See Bourne*, 262 B.R. at 759 (citing cases which have permitted offset notwithstanding stay violation and cases denying offset due to stay violation). The Eleventh Circuit has held that section 362 does not "give the Bankruptcy Court the authority to deny all or part of a setoff in lieu of damages simply because the creditor initially violated the automatic stay." *United States v. Ruff (In re Rush–Hampton Indus.)*, 98 F.3d 614, 616 (11th Cir.1996). The Eleventh Circuit noted that "[n]o compelling authority has been cited to us to support a holding that the bankruptcy court could impose a permanent stay of setoff, *i.e.*, deny the right of setoff, ... without going beyond the discretion it is permitted in such matters." *Id.* at 617. The Fifth Circuit has not addressed the

issue directly, but has held that the automatic stay does not defeat a right of setoff; rather, setoff is merely stayed pending orderly examination of the debtor's and the creditor's rights. *Stephenson*, 967 F.2d at 1076. The Fifth Circuit noted that although the plaintiff conceded that he had never petitioned the court for relief from the automatic stay to assert his right to setoff, the omission was not fatal. *Id.* at 1077. The plaintiff could assert a right of setoff as a defense to a turnover action. *Id.*

Here, neither the Debtors nor any other party-in-interest is prejudiced if AAFES is allowed to exercise its right of setoff. As previously noted, the Debtors are not entitled to compel payment of the 2000 tax refund to them. *See* pp. 4–6, *supra*. Under section 506(a) of the Bankruptcy Code, AAFES is treated as a secured creditor in the Debtors' case to the extent of $2,108.15 (the amount of the tax refund) and the Bankruptcy Code requires that AAFES be paid this amount (in present value dollars) under the Debtors' Chapter 13 plan for that plan to be confirmable over AAFES's objection. *See* 11 U.S.C. § 1325(a)(5).[4]

█ Because the Court has concluded that no party is prejudiced by allowing AAFES to exercise its right of setoff, the only remaining issue is whether AAFES's request for nunc pro tunc relief from the stay should be granted. In other words, should the automatic stay be annulled in order to validate the offset already effectuated by the IRS on behalf of AAFES? Although not all circuit courts agree, in the Fifth Circuit, actions taken in

ance of the debt turned over to the estate after the offset has been exercised. Thereafter, the exempted property is protected from all other prepetition debts pursuant to § 522(c). *Id.* at 756.

4. While this dispute was pending, the Debtors' final Chapter 13 plan was confirmed, without objection, by Order entered on March 15, 2002. Under the confirmed plan, AAFES is treated as an unsecured creditor with a $163.64 claim. Unsecured creditors are estimated to receive zero (0)% under the plan.

violation of the automatic stay are voidable, not void. *See Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178 (5th Cir.1989) ("We are persuaded that the better reasoned rule characterizes acts taken in violation of the automatic stay as voidable rather than void.").

If AAFES had filed its motion for relief from stay before it caused the IRS to pay the Debtors' 2000 tax refund to it, the Court would have granted that motion. Here, the fact that AAFES took its action prematurely, standing alone, does not present a sound basis to deny the Motion. Although given the opportunity, the Debtors offered no evidence of any harm to them from granting the Motion nunc pro tunc. Rather, the Debtors contend, without cited authority, that "this Court, in the interest of its own jurisdiction and authority, should as a sanction under §§ 362(h) and/or 105(a) deny the relief sought." *See* Debtors' Brief at p. 8.

While the Court is troubled by AAFES's violation of the automatic stay, because no party-in-interest has been prejudiced by AAFES's actions, the Court concludes that the Motion should be granted.

### III. Conclusion

All requirements for setoff under section 553 of the Bankruptcy Code are satisfied here. AAFES has a valid non-bankruptcy right of setoff that section 553 preserved. AAFES and the IRS are the same entity for purposes of setoff.

Because the Debt exceeds the amount of the Debtors' 2000 tax refund, there is no net amount owing to them after setoff—*i.e.*, there is no actual refund to become property of the estate. Thus, the Debtors could not properly claim it as exempt under section 522(c).

Notwithstanding its delay in filing the Motion, the automatic stay of section 362 of the Bankruptcy Code shall be modified nunc pro tunc to validate AAFES's setoff of the 2000 tax refund against the Debt.

An Order consistent with this Memorandum Opinion will be entered separately.