**IN RE: Jubilee FAASOA, Debtor,**

**Jubilee Faasoa, Plaintiff,**

**v.**

**Army & Air Force Exchange Service, Defendant.**

**Bankruptcy Case No. 17–02558–CL7**
**Adversary Proceeding No. 17–90153–CL**

United States Bankruptcy Court,
S.D. California.

Signed October 10, 2017

Daniel Wiedecker, Debt Relief Legal Clinic, San Diego, CA, for Plaintiffs.

Beth A. Clukey, United States Attorney, San Diego, CA, for Defendant

CHRISTOPHER B. LATHAM, JUDGE
United States Bankruptcy Court

### MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT

Before the court is defendant Army & Air Force Exchange Service's motion to dismiss under Rule 12(b)(6). Prepetition, plaintiff Jubilee Faasoa incurred credit card debt to Defendant. He then filed his 2016 federal income tax return, expecting a refund. But the U.S. Department of the Treasury intercepted the tax overpayment and applied it to the debt he owed Defendant. No funds remained once the setoff was complete. Plaintiff consequently did not receive a tax refund. And despite repeated demands, Defendant declined to issue one.

In response, Plaintiff brought this adversary proceeding seeking: (1) immediate turnover of the tax refund under §§ 522, 541, 542 and 547; and (2) § 362(k)($l$) damages, including punitive damages, for Defendant's alleged ongoing stay violation. This motion followed.

The court finds that Defendant holds nonbankruptcy law setoff rights that are recognized and enforceable in bankruptcy under § 553. Plaintiff does not identify compelling circumstances to justify disallowing setoff. And his other arguments fail as a matter of law. Accordingly, the court grants Defendant's motion and dismisses the complaint without leave to amend.

### I. JURISDICTION AND VENUE

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (E), (F), and (O). Venue is proper under 28 U.S.C. § 1409(a).

### II. FACTUAL BACKGROUND AND HISTORY

#### A. Overview

Defendant is a component of the U.S. Department of Defense that offers goods and services for sale to active duty service members, retirees, and their families. It operates more than 2,700 facilities worldwide, including retail, specialty, and convenience stores, theaters, quick-serve restaurants, and concession operations. It also manages and funds Military Star, which "is an in-house credit plan that provides the military and authorized family members affordable credit at AAFES facilities worldwide." *In re Buttrill,* 549 B.R. 197, 200 (Bankr. E.D. Tenn. 2016) (citing 10 U.S.C. § 2481; 32 C.F.R. § 842.127)). About two million service members from all military branches currently hold Military Star accounts.

At some point prepetition, Plaintiff incurred credit card debt to Defendant. He later claimed an overpayment on his 2016 federal income taxes. On February 8, 2017, the Treasury Department intercepted the tax overpayment and forwarded it to Defendant to offset Plaintiff's delinquent consumer debt. After the IRS exercised the United States' setoff rights on Defendant's behalf, no funds remained. Plaintiff consequently did not receive a tax refund for 2016.

## B. Plaintiff's Bankruptcy Case

Plaintiff filed a voluntary Chapter 7 petition in April 2017 (Bankr. ECF No. 1). He originally scheduled $5,815 in assets and $17,284 in liabilities. *Id.* at p. 30. Amended Schedule B listed a $3,000 interest in a "2016 Federal Income Tax Refund offset by unsecured creditor AAFES" (Bankr. ECF No. 14–1, p. 1). Plaintiff fully exempted that interest under California Code of Civil Procedure § 703.140(b)(5). *Id.* at p. 3. Schedule F disclosed a $2,872 obligation to Military Star, described as a 2012 "revolving account" debt (Bankr. ECF No. 1, p. 20). And Paragraph 11 of the Statement of Financial Affairs revealed that AAFES/NEXCARD offset $2,865 from Plaintiff's 2016 federal income tax refund on February 8, 2017 (Bankr. ECF No. 14–1, p. 6).

Plaintiff's bankruptcy case proceeded in the normal course, and he received his discharge on August 1, 2017 (Bankr. ECF No. 16). The day before that, he filed this adversary proceeding (ECF No. 1) (the "Complaint").

## C. The Complaint

The Complaint alleges that the Treasury Department withheld $2,865 from Plaintiff and his wife's 2016 federal income tax refund to satisfy an outstanding obligation to Defendant (ECF No. 1, p. 10). In July 2017, Plaintiff's counsel demanded that Defendant return the funds. Defendant refused. *Id.* at pp. 18–19. Because the funds were fully exempted yet intercepted within 90 days prepetition, Plaintiff believes they are recoverable as an avoidable preferential transfer. The Complaint thus seeks an order: (1) requiring Defendant to immediately turn over to Plaintiff the $2,865 plus interest under §§ 522, 541, 542, and 547; and (2) awarding Plaintiff reasonable attorney's fees, expenses, and punitive damages for Defendant's alleged ongoing stay violation under § 362(k)(*l* ).

## D. Defendant's Motion to Dismiss

Defendant now moves to dismiss the Complaint. It argues that the United States properly exercised its § 553 setoff rights in transferring Plaintiff's tax overpayment to Defendant because: (1) Plaintiff and Defendant owed each other prepetition obligations; and (2) § 553's mutuality requirement is met since both Defendant and the IRS are federal governmental entities.

Defendant further contends Plaintiff's right to a tax refund did not arise until after Defendant exercised its setoff rights. Once that happened, there were no remaining funds to come into the estate. Plaintiff's claimed exemption in the tax refund is thus invalid.

Defendant next asserts that, even if Plaintiff's claimed exemption were viable, plain Ninth Circuit authority has held that § 553 controls over any § 522 exemption rights Plaintiff may have held.

Finally, Defendant cites myriad authorities standing for the proposition that § 553 exclusively governs setoff issues—§ 547 is inapplicable.

Plaintiff does not dispute Defendant's rendition of the facts or the law. And he concedes that: (1) Defendant and the IRS are "united" parts of the United States; (2) § 553 mutuality exists; and (3) the United States properly exercised its § 553 setoff rights by intercepting his tax overpayment. But he urges the court to disallow setoff owing to the case's "compelling equities." In particular, although he and his wife are gainfully employed, he filed bankruptcy and was adjudicated insolvent. His wife is also considering bankruptcy. This, he contends, strongly suggests that

he needs the tax refund to pay daily living expenses.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), incorporated into the Federal Rules of Bankruptcy Procedure in Rule 7012, tests a complaint's legal sufficiency and requires the reviewing court to accept all factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Lacey v. Maricopa County*, 693 F.3d 896, 907 (9th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When ruling on a Rule 12(b)(6) request, the Complaint must be construed in the light most favorable to Plaintiff. *Parks Sch. of Bus. Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995). The court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

"A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In the end, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle the plaintiff to some relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Rule 12(b)(6) motions are generally viewed with disfavor. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). And dismissal without leave to amend is proper only in "extraordinary" cases. *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981). Thus, "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (quoting *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002)).

### B. Section 553 Setoff

The concept of setoff dates to early Roman and French law. *In re HAL, Inc.*, 196 B.R. 159, 161 (9th Cir. BAP 1996) (citing *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 237 (9th Cir. BAP 1991); *In re Hancock*, 137 B.R. 835, 840 (Bankr. N.D. Okla. 1992)). Although it was not recognized as a legal right under English common law, "it was first used by the courts of equity as a discretionary procedural device in order to prevent multiplicity of actions." *In re HAL, Inc.*, 196 B.R. at 162 (citing 4 COLLIER ON BANKRUPTCY ¶ 553.01 at 553–3 (15th ed. 1991); *In re Hancock*, 137 B.R. at 840). Put differently, "the use of setoff prevented a court from having to entertain two separate lawsuits, enter two separate judgments, and require the parties to try and collect on their individual judgments. Instead, the court merely netted out the amounts owing and entered one judgment...." *In re HAL, Inc.*, 196 B.R. at 162. Today, however, setoff has come to be recognized as both a statutory right and a "latter-day common-law doctrine derived from the equitable doctrine." *Id.* (quoting *In re Hancock*, 137 B.R. at 840).

 Section 553 governs setoff rights in bankruptcy. It provides:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.] . . .

*In re Gould*, 401 B.R. 415, 423 (9th Cir. BAP 2009) (quoting 11 U.S.C. § 553(a)). Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (quoting *Citizens Bank of Md. v. Strumpf* 516 U.S. 16, 19, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)). "Setoffs in bankruptcy have been 'generally favored,' and a presumption in favor of their enforcement exists." *In re Gould*, 401 B.R. at 423 (quoting *Carolco Television, Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1989)). The party asserting an enforceable setoff right bears the burden of proof. *Newbery Corp.*, 95 F.3d at 1399 (quoting *In re Cty. of Orange*, 183 B.R. 609, 615 (Bankr. C.D. Cal. 1995)).

Section 553 does not provide "an independent source of law governing setoff; it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of nonbankruptcy law." *United States of America v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 763 (9th Cir. 1994) (quoting *United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983)). *Accord, e.g., In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d at 1277 ("Section 553 does not by itself create a right of setoff. Instead, it merely allows setoffs in bankruptcy to the extent they are allowed under [nonbankruptcy] law."), *cert. denied*,

506 U.S. 918, 113 S.Ct. 330, 121 L.Ed. 2d 249 (1992); *In re Buckenmaier*, 127 B.R. 233, 237 (9th Cir. BAP 1991) ("The Code does not create or expand the setoff right but instead merely preserves the common-law right under applicable non-bankruptcy law.") (quotation omitted).

■■■■ Applicable nonbankruptcy law thus confers a right of setoff; but it does not "supplant[ ] § 553 in determining whether this right is recognized and preserved in bankruptcy." *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 590 (9th Cir. BAP 2007). That is, "§ 553 does not create a right of setoff, but merely preserves a creditor's setoff rights under applicable nonbankruptcy law. To enforce a setoff right, '[a creditor] must establish that (1) it has a right of setoff under nonbankruptcy law; and (2) this right should be preserved in bankruptcy under § 553.'" *In re Luz Int'l, Ltd.*, 219 B.R. 837, 843 (9th Cir. BAP 1998) (internal quotations omitted). Accordingly, the party asserting setoff rights created under nonbankruptcy law must still satisfy § 553's requirements to have those rights recognized in bankruptcy. *Id. See also In re Wade Cook Fin. Corp.*, 375 B.R. at 591.

■■■■ Three conditions must be met for setoff in bankruptcy: "(1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual." *In re Wade Cook Fin. Corp.*, 375 B.R. at 594 (quoting *In re Luz Int'l, Ltd.*, 219 B.R. at 843–44). "In essence, a creditor must establish two elements before a setoff may be asserted: timing and mutuality." *In re Wade Cook Fin. Corp.*, 375 B.R. at 594 (citing *In re Buckenmaier*, 127 B.R. at 238).

■■■■ As to the timing component, "each debt or claim sought to be offset must

have arisen *prior* to the filing of the bankruptcy petition." *In re Wade Cook Fin. Corp.*, 375 B.R. at 594 (quoting *Newbery Corp.*, 95 F.3d at 1398; *In re Buckenmaier*, 127 B.R. at 238) (emphasis in original).

The mutuality mandate is strictly construed. *Newbery Corp.*, 95 F.3d at 1399; *In re Wade Cook Fin. Corp.*, 375 B.R. at 594; *In re Cty. of Orange*, 183 B.R. at 615 ("[T]he mutuality requirement in bankruptcy should be strictly construed because setoffs run contrary to fundamental bankruptcy policies such as the equal treatment of creditors and the preservation of a reorganizing debtor's assets."). To meet it, "something must be 'owed' by both sides." *In re Buckenmaier*, 127 B.R. at 238 (quoting 4 COLLIER ON BANKRUPTCY, §§ 553.04, 553.18 (15th ed. 1990)). The Ninth Circuit has a three-prong test for determining mutuality: "(1) the debts must be in the same right; (2) the debts must be between the same individuals; and (3) those individuals must stand in the same capacity." *In re Luz Int'l, Ltd.*, 219 B.R. at 845 (quoting *In re Cty. of Orange*, 183 B.R. at 616 (citing *In re Visiting Home Servs., Inc.*, 643 F.2d 1356, 1360 (9th Cir. 1981))). *See also In re HAL, Inc.*, 196 B.R. at 161–62 ("The principal element of setoff is mutuality, which requires that the debts are 'in the same right and between the same parties, standing in the same capacity and same kind or quality.'" (quoting *Bos. & Me. Corp. v. Chi. Pac. Corp.*, 785 F.2d 562, 566 (7th Cir. 1986)).

"The mutual debts must arise prepetition in order to be in the 'same right.'" *In re Luz Int'l Ltd.*, 219 B.R. at 845 (citing *In re Cty. of Orange*, 183 B.R. at 616 (citing *In re Bay State York Co., Inc.*, 140 B.R. 608, 614 (Bankr. D. Mass. 1992))). Indeed, pre- and post-petition debts do not have the same setoff rights. *In re Cty. of Orange*, 183 B.R. at 616 (citing *In re Bay State York Co., Inc.*, 140

B.R. at 614; *In re NTG Indus., Inc.*, 103 B.R. 195, 196 (Bankr. N.D. Ill. 1989)). But the debts "need not arise from the same transaction or be of the same character." *In re Buckenmaier*, 127 B.R. at 238. *See also Newbery Corp.*, 95 F.3d at 1398 (Setoff's defining characteristic is that "the mutual debt and claim .... are generally those arising from *different* transactions.") (emphasis in original). Moreover, the "same right" concept "subsumes the separate question of whether any of the obligations sought to be offset are owed jointly with some other entity." *In re Ter Bush*, 273 B.R. 625, 629 (Bankr. S.D. Cal. 2002) (citing 5 COLLIER ON BANKRUPTCY ¶ 553.03[3][d], at 553–39 (15th ed. Revised 2001)).

" '[C]apacity' refers to the nature of the relationship between the parties. Thus, where a debt arises from a fiduciary duty or is in the nature of a trust, courts have held that there is no mutuality for setoff purposes." *In re Luz Int'l, Ltd.*, 219 B.R. at 848 (citing *W. Dealer Mgmt., Inc. v. England (In re Bob Richard Chrysler-Plymouth Corp., Inc.)*, 473 F.2d 262 (9th Cir.), *cert. denied*, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed. 2d 145 (1973)).

Finally, the trial court has discretion to allow or disallow setoff. *In re Silver Eagle Co.*, 262 B.R. 534, 536 (Bankr. D. Or. 2001) (citing *In re Medina*, 205 B.R. 216, 223 (9th Cir. BAP 1996)). And it is well settled that § 553 setoff rights are "permissive, not mandatory." *In re Gould*, 401 B.R. at 429. Indeed, myriad cases hold that the court may disallow a setoff on equitable grounds. *See, e.g., In re Brown & Cole Stores, LLC*, 375 B.R. 873, 879 (9th Cir. BAP 2007) (equitable considerations may be considered in allowing or denying a setoff); *In re Hal, Inc.*, 122 F.3d 851, 854 (9th Cir. 1997) ("Setoff will not be permitted when it would be inequitable or contrary to public policy to do so."); *New-*

*bery Corp.*, 95 F.3d at 1399 (setoff's application "rests in the discretion of [the] court, which exercises such discretion under the general principles of [equity]."); *In re Cascade Roads, Inc.*, 34 F.3d at 764 ("Courts regularly state that '[t]he application of setoff . . . is permissive and lies within the equitable discretion of the trial court. . . . [W]hen justice dictates, setoff must be denied."); *In re Buckenmaier*, 127 B.R. at 237 ("Because the setoff right is an established part of our bankruptcy laws, it should be enforced 'unless compelling circumstances . . .' require otherwise."); *In re Woodside Grp., LLC v. Woodside Grp., LLC*, No. 6:08–bk–20682–PC, 2009 WL 6340015, at *4 (Bankr. C.D. Cal. Dec. 30, 2009) ("Once the three-part test is satisfied, a court 'must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives' which 'include an orderly bankruptcy process and equitable treatment of all creditors.' "). Courts have also denied setoff: (1) where it would jeopardize a debtor's ability to reorganize; and (2) in a liquidation case if it results in a preference or priority over other unsecured creditors. *In re HAL, Inc.*, 196 B.R. at 166.

With the above framework established, the court turns to the merits.

## IV. LEGAL ANALYSIS AND CONCLUSIONS

Plaintiff in opposition concedes most of Defendant's arguments. He instead asks that setoff be disallowed on equitable grounds. The court could simply analyze the case's equities and rule accordingly. But for the sake of analytical completeness—and to clarify the state of the law in the Ninth Circuit—it will nevertheless address each argument.

The court therefore employs the following formula: First, does Defendant have setoff rights under nonbankruptcy law? If so, should those rights be recognized and enforced in bankruptcy? This turns on whether Defendant has satisfied § 553's requirements. Finally, if Defendant establishes nonbankruptcy law setoff rights that are enforceable under § 553, are there compelling equities justifying those rights' disallowance?

### A. Defendant's Nonbankruptcy Law Setoff Rights

It is well established that government agencies have setoff rights outside of bankruptcy. *In re HAL, Inc.*, 196 B.R. at 162. Indeed, "[t]he government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' " *Id.* (quoting *United States v. Munsey Trust Co. of Wash. D.C.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947)). *See also Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841); *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 540, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946). In this instance, the IRS—by retaining Plaintiff's tax overpayment to set off funds he owed Defendant—exercised setoff on Defendant's behalf. It has a statutory right to do so. The BAP has stated:

> The federal government . . . has enacted various statutory setoff provisions in title 31 of the United States Code. One section authorized government agencies to setoff [sic] "past-due legally enforceable debt [s]" with the unpaid federal tax refunds of the debtor. 31 U.S.C. § 3720A (1994). However, in order to use this section, the government agency has to formally enter into an agreement with the IRS, notify the IRS of any deficiency, and conform to the procedural due process requirements contained in the statute.

*In re HAL, Inc.*, 196 B.R. at 167 n.3.

The United States also has statutory administrative offset powers. *Astrue*

*v. Ratliff*, 560 U.S. 586, 589–90, 130 S.Ct. 2521, 177 L.Ed. 2d 91 (2010) ("The Government's authority to use administrative offsets is statutory. *See* 31 U.S.C. §§ 3711, 3716(a) (authorizing an agency whose debt collection attempts are unsuccessful to 'collect the claim by administrative offset').").

In addition, the Treasury Department's Bureau of the Fiscal Service administers centralized offset of federal payments to collect delinquent, nontax debts owed to federal agencies in accordance with 31 U.S.C. §§ 3716 and 3720A, and 26 U.S.C. § 6402. *See* 31 C.F.R. § 285.5(a)(1).[1] "Offset occurs when the Federal government withholds part or all of a debtor's Federal payment to satisfy the debtor's delinquent debt owed to the government." *Id.* Moreover, "special rules apply to the collection of delinquent, nontax debts through the centralized offset of certain types of Federal payments, including tax refunds (31 CFR 285.2)." *See* 31 C.F.R. § 285.5(a)(2). Section 285.2 provides the procedures and requirements that must be satisfied before the Bureau of the Fiscal Service may offset a debtor's tax refund. *See* 31 C.F.R. § 285.2(b).

Finally, the IRS's setoff rights arise under 26 U.S.C. § 6402(a), which provides that:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall … refund any balance to such person.

*In re Gould*, 401 B.R. at 424 (quoting 26 U.S.C. § 6402(a)). "The statute allows the IRS to credit 'overpayments' against liabilities for taxes before determining whether a taxpayer is entitled to a 'refund.'" *Id.* Further, 26 U.S.C. § 6402(d) mandates that, upon receiving notice from any federal agency that a debtor owes a past-due legally enforceable debt, the Secretary shall:

> (A) reduce the amount of any overpayment payable to such person by the amount of such debt;
>
> (B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and
>
> (C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

*See* 26 U.S.C. § 6402(d)(*l* )(A)–(C). *See also In re Sexton*, 508 B.R. 646, 658–59 (Bankr. W.D. Va. 2014) ("The provisions further instruct the Secretary to forward the withheld amount to the appropriate federal agency and notify the taxpayer of the offset. After compliance with the provisions of the intercept statute, the Secretary must refund any remaining balance to the taxpayer.").

The Bankruptcy Court for the Northern District of Texas has explained that "[s]ection 6402(d) authorizes the Secretary of the Treasury to set off a tax refund against the taxpayer's debt to another Federal agency. Section 3720A provides the procedural framework for that setoff." *In re Shortt*, 277 B.R. 683, 689 (Bankr.

---

1. Routinely referred to as the "Treasury Offset Program." *See, e.g., Briggs v. U.S.*, No. C-07-05760-WHA, 2009 WL 113387, at \*1 (N.D. Cal. Jan. 16, 2009) ("When debts become delinquent, the United States is authorized to withhold tax refunds or other benefits that the government owes the debtor and to offset those monies against the delinquent debt. 31 U.S.C. 3716, 3720A. Federal agencies refer delinquent debts to the Department of the Treasury, which administers a centralized debt collection efforts called the Treasury Offset Program ("TOP") using administrative offsets.").

N.D. Tex. 2002) (quoting *Aetna Cas. & Sur. Co. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 94 F.3d 772, 778–79 (2d Cir. 1996)).

There was thus clear statutory authority allowing the IRS to intercept Plaintiff's tax overpayment and apply it to the debt he owed Defendant. Plaintiff no longer asserts otherwise. Nor does he contend that Defendant failed to follow 31 U.S.C. §§ 3716 and 3720A, and 26 U.S.C. § 6402's applicable notice, regulatory, and procedural requirements.

Accordingly, the court holds that the IRS possessed and properly exercised Defendant's nonbankruptcy law setoff rights in intercepting Plaintiff's tax overpayment and using it to offset the debt he owed.

## B. Defendant Satisfies § 553's Requirements

As stated above, Defendant must establish § 553's timing and mutuality requirements for its nonbankruptcy law setoff rights to be preserved and enforced in bankruptcy. For the following reasons, the court concludes that it has.

Section 553's timing requirement is plainly met. The evidence shows that the respective debts arose prepetition: the Treasury Department intercepted Plaintiff's tax overpayment on February 8, 2017, yet he did not file for bankruptcy until April 28, 2017.

Mutuality is also satisfied. Plaintiff's sole assertion against it is that Defendant and the IRS are separate governmental agencies. This argument is not well taken: the United States, together with its various departments and components, is considered a unitary creditor in bankruptcy cases. The Ninth Circuit has expressly held that for § 553's purposes, "the agencies of the United States constitute a single 'governmental unit,' as defined in

§ 101(27)...." *In re Hal, Inc.*, 122 F.3d at 853. *See also In re Cottle*, 2016 WL 6081030, at *7 (9th Cir. BAP Oct. 17, 2016) ("Where general setoff rights are concerned under § 553(a), courts, analogizing the federal government's right to setoff outside of bankruptcy, treat agencies and departments of the federal government, 'except those acting in some distinctive private capacity,' as a single 'governmental unit.'") (citing *Cherry Cotton Mills, Inc.*, 327 U.S. at 536, 66 S.Ct. 729).

The two debts are in the same right since both arose prepetition. The same individuals are involved—Plaintiff owed Defendant (a federal governmental entity) a credit card debt, and the IRS (another governmental agency) owed Plaintiff a tax refund based on overpayment. Finally, the parties were standing in the same capacity—the debt did not arise from a fiduciary relationship and was not in the nature of a trust. Instead, they owed mutual debts (again, the governmental components are treated as a single unit for § 553's purposes).

Accordingly, the court holds that Defendant has established nonbankruptcy law setoff rights that should be recognized and enforced under § 553.

## C. No Compelling Equities Justify Disallowance of Setoff

Alternatively, Plaintiff urges the court to disallow Defendant's setoff rights on equitable grounds. He cites *Gould* in support of five equitable factors the court may consider in disallowing setoff. And he argues that those factors favor disallowance since: (1) he was adjudicated an "insolvent"; (2) his wife is considering filing her own bankruptcy petition; and (3) he believes he needs the refund. The court disagrees.

As a general proposition, Plaintiff is correct that § 553 setoff is permissive, and that the court has discretion to disallow it for various reasons, including: (1) general equitable principles; (2) public policy grounds; (3) whether the Code's goals and objectives are being met; (4) where it would jeopardize a debtor's ability to reorganize; (5) in liquidation cases where disallowance would result in a preference or priority over other unsecured creditors; (6) where justice so dictates; and (7) where other "compelling circumstances" exist.

But his reliance on *Gould* is misplaced. That case involved an appeal of the bankruptcy court's order denying the IRS stay relief to exercise its setoff rights against tax refunds in which a Chapter 13 debtor had claimed a wildcard exemption. *In re Gould*, 389 B.R. 105 (Bankr. N.D. Cal. 2008). Since Plaintiff relies on the lower court's reasoning, the court begins its discussion there.

The debtor in *Gould* was a divorced father of two who worked as a mechanic with only $75 in monthly net income. His main assets were a 1987 Jeep Cherokee, a $3,217 state income tax refund, and a $6,852 federal income tax refund. And his only significant prepetition obligations were tax debts to the Franchise Tax Board and IRS for $28,000 and $10,000, respectively. The debtor filed a voluntary Chapter 13 petition in January 2005. Shortly thereafter, he amended his schedules to disclose and fully exempt his interest in his 2002 through 2004 federal income tax refunds. In October 2005, the IRS sought stay relief "to allow the IRS to 'offset the tax refunds totaling $8,733 owed by the IRS to the debtor against the IRS' claim of $9,972.44 against the debtor.'" *In re Gould*, 389 B.R. at 110. The debtor opposed, arguing that he had a superior right to the tax refund since he had fully ex-

empted it under federal and state law. The bankruptcy court was consequently faced with whether to allow setoff against fully exempted property (which no party objected to).

The bankruptcy court exhaustively analyzed the cases interpreting whether § 553 or § 522 takes precedence. It noted that, absent the debtor's unopposed exemption in the refunds, the IRS should be allowed to exercise its setoff rights under § 553 and 26 U.S.C. § 6402(a). But since it failed to object, the debtor's claim of exemptions in the tax refunds was valid and unassailable. The exempt tax refunds were no longer estate property liable to setoff against debts owed by the estate. They were thus not subject to the IRS's subsequent efforts to assert setoff because the debtor's allowed exemption was superior to the IRS's § 553 setoff rights.

The bankruptcy court also denied the motion on the merits. In doing so, it balanced the case's equities and noted several factors weighing in the debtor's favor. Specifically:

- The IRS failed to object, or request an extension of time to object, to the debtor's claim of exemptions in the tax refunds;

- 26 U.S.C. § 6402(a) did not confer upon the IRS any extraordinary status or rights—it merely allowed the discretionary setoff of debts owed to the IRS;

- The IRS did not timely exercise its discretionary setoff rights, *i.e.*, it did not seek stay relief until several months after the debtor claimed his exemption; and

- The debtor's financial position weighed heavily in his favor. Specifically: (1) he was not attempting "to take unfair advantage" of the IRS by using his exemptions to defeat a setoff; (2) he owned no assets other

than the tax refunds, which provided him with "the basic necessities of life"; (3) had two dependent children; and (4) allowing the IRS to set off the tax refunds would take his wildcard exemption—the most important exemption available to him as a nonhomeowner—and run contrary to bankruptcy and California state exemption policy.

*Id.* at 127–30. *See also In re Gould,* 401 B.R. at 429. The bankruptcy court therefore: (1) denied the IRS's motion; (2) determined that it was not entitled to setoff and so did not have a basis to retain the debtor's tax refund; and (3) directed it to turn those funds over to the debtor. *In re Gould,* 389 B.R. at 131. The IRS appealed.

Plaintiff contends that the *Gould* bankruptcy court's analysis applies equally here. After considering the BAP's reasoning, however, the court must disagree.

The BAP reversed the bankruptcy court's decision on two grounds. First, it held that § 553 controls over § 522(c). *In re Gould,* 401 B.R. at 428 ("We concluded that to give Debtor's exemption in his claim to the tax refunds precedence over § 553 would be to ignore the plain language of § 553."). The bankruptcy court thus abused its discretion in denying the IRS § 362(d)(1) relief. It also erred in denying the IRS § 362(d)(2) relief since: (1) applying the debtor's prepetition tax overpayments to his unpaid tax liabilities would still leave an outstanding tax liability, *i.e.,* no equity for the debtor; (2) there was no refund to which the debtor's claimed exemption could attach; and (3) the debtor presented no evidence that the tax refunds were necessary to an effective reorganization. *Id.*

More important, the BAP did not expressly adopt the bankruptcy court's "compelling equities" factors; rather, it simply disagreed that any weighed in the debtor's favor. *Id.* at 429–31.

Because the BAP did not embrace the factors in *Gould,* the court does not consider them a definitive—or even persuasive—explication of the Ninth's Circuit's "compelling circumstances" or "equitable consideration" requirements. Moreover, based on the totality of the facts and circumstances, the court finds no compelling equities warrant disallowance of setoff.

Plaintiff's central argument is that he needs the tax refund for basic life necessities. This is unpersuasive. According to Schedule I, Plaintiff and his wife were gainfully employed on the petition date, with $3,938.32 in combined adjusted monthly income (Bankr. ECF No. 1, pp. 25–26). Schedule J listed $3,940 in monthly expenses, leaving only a $1.68 deficit monthly. *Id.* at pp. 27–28. But as Defendant observes, Plaintiff discharged significant debt through his bankruptcy case. Without those obligations, Plaintiff ostensibly now has additional income to devote to basic living expenses post-discharge. And if his wife files for bankruptcy and receives a discharge, the family will presumably have even less debt to service. The court also doubts this could ever be a convincing argument—the vast majority of individual debtors need more money.

In addition, *Gould* is readily distinguishable on its facts. The debtor there did not file his tax returns until well after the petition date. The IRS was seeking stay relief to invoke its setoff rights. Here, the parties' obligations were established prepetition. The IRS exercised its nonbankruptcy law setoff rights prepetition, and those are now cognizable under § 553. In addition, the IRS in *Gould* failed to object to the debtor's claimed exemptions within the allowed time. Here, Plaintiff amended Schedule C to claim the tax refund as exempt on July 28, 2017. He received his

discharge on August 1, 2017. And the case was closed on August 7, 2017. Defendant's deadline to object to Plaintiff's new claim of exemption had not yet run when the case was closed. *See* FED. R. BANKR. P. 4003(b).

Nor does the court find that setoff is contrary to public policy or the Code's objectives. It shares the BAP's concern over "whether California exemption policy holds any weight under these circumstances when a federal statute such as IRC § 6402 controls the IRS's setoff rights. ... Arguably, the Supremacy Clause of the United States Constitution prevents state exemption laws from defeating federal setoff rights provided under IRC § 6402." *In re Gould*, 401 B.R. at 430. This reasoning applies equally to Defendant's Title 31 setoff rights.

Finally, the court fails to see how allowing setoff will jeopardize Plaintiff's ability to reorganize—he filed for Chapter 7 relief and has already obtained his discharge.

Accordingly, the court finds that no compelling circumstances justify disallowing setoff on equitable grounds.

### D. Plaintiff's Remaining Arguments Are Unavailing

The court addresses Plaintiff's remaining arguments in turn.

#### 1. Plaintiff Has Standing to Demand Turnover and Seek § 362(k)(*l* ) Damages

 Plaintiff contends that the tax refund is recoverable under §§ 522 and 542. And he seeks attorney's fees and costs under § 362(k)(*l* ) for Defendant's ongoing stay violation in refusing to restore the refund upon demand. But § 542 "enables the bankruptcy trustee, or the debtor-in-possession in a reorganization case to seek turnover of the debtors' assets, for the benefit of the estate." *In re Hernandez,*

483 B.R. 713, 725 (9th Cir. BAP 2012). Plaintiff filed for Chapter 7 relief. "Under the statute, a chapter 7 debtor is not mentioned and generally has no standing to bring an action for turnover." *Id.* (citing *In re Freeman,* 331 B.R. 327, 329 (Bankr. N.D. Ohio 2005). But this is not fatal to the case. The BAP has recently touched on this point:

> The procedural irregularity was remedied however by debtor's response to Collect's opposition. The ultimate relief that debtor sought was to preserve his exemption in the levied funds by invoking § 522(g) and/or by exercising the trustee's avoiding powers under § 522(h). Moreover, as of the commencement of the case, the automatic stay under § 362(a) arises, which enjoins any and all collection efforts against the debtor. As an enforcement mechanism, a debtor is afforded a private right of action to seek redress under § 362(k)(*l* ). "Section 522's right to claim exemptions in property of the estate bestows standing on debtors for purposes of § 362(k)(*l* )." *In re Mwangi,* 432 B.R. 812, 822 (9th Cir. BAP 2010). Therefore, debtor's statutory standing to seek the return of the funds levied upon was conferred by statutes other than § 542(a).

*In re Hernandez,* 483 B.R. at 725–26. Although the BAP addressed the issue under § 542(a), the court finds its reasoning equally persuasive under § 542(b) given that it adverts only to the trustee. As in *Hernandez,* Plaintiff is invoking §§ 522(g) and (h). Accordingly, the court need not deny Plaintiff's turnover request for lack of standing.

#### 2. The Tax Refund Never Became Estate Property and Thus Cannot Be Exempted Under § 522

 It is well established that unliquidated claims for tax refunds for prepeti-

tion tax years are estate property. *See, e.g., Kokoszka v. Belford,* 417 U.S. 642, 648, 94 S.Ct. 2431, 2435, 41 L.Ed. 2d 374 (1974); *Mueller v. Comm'r,* 496 F.2d 899, 903 (5th Cir. 1974); *In re Barowsky,* 946 F.2d 1516 (10th Cir. 1991); *In re Shortt,* 277 B.R. at 687 ("In general, a debtor's claim to a tax refund is property of the estate."). But there is a legal distinction between a "tax overpayment" and "tax refund." Interpreting 26 U.S.C. § 6402, the Bankruptcy Court for the Middle District of Georgia has stated:

Note the distinction between an overpayment and a refund. The refund is the balance of the overpayment after it has been applied to past tax liabilities. *In re Pigott,* 330 B.R. 797, 800 (Bankr. S.D. Ala. 2005). Thus, this provision "grants the IRS discretion whether to offset against a debtor's unpaid tax liability or to refund the overpayment to the taxpayer." *Beaucage v. U.S.,* 342 B.R. 408, 411 (D. Mass. 2006). As a result, the debtor is not entitled to a refund to the extent of the unpaid liability. *Id.; In re Baucom,* 339 B.R. 504, 507 (Bankr. W.D. Mo. 2006); *IRS v. Luongo (In re Luongo),* 259 F.3d 323, 335 (5th Cir. 2001); *Lyle v. Santa Clara Cty. Dept. of Child Servs. (In re Lyle),* 324 B.R. 128, 131 (Bankr. N.D. Cal. 2005). In fact, "overpayments are not assets of the taxpayer until the IRS credits any overpayment to unpaid taxes." *Pigott,* 330 B.R. at 800 (citing *Estate of Bender v. Comm'r of Int. Rev.,* 827 F.2d 884 (3d Cir. 1987)). Consequently, the anticipated refund does not become property of the estate. *Beaucage,* 342 B.R. at 411; *In re Shortt,* 277 B.R. 683, 692 (Bankr. N.D. Tex. 2002).

*In re Jones,* 359 B.R. 837, 841 (Bankr. M.D. Ga. 2006).

The *Jones* court went on to hold that a debtor has a right to a tax refund only to the extent his overpayment exceeds any preexisting tax liability. The refund does not become estate property subject to exemption until after the IRS has conducted any offset. *Id.* Myriad authorities are in accord. *See, e.g., In re Shortt,* 277 B.R. at 688 ("A claim to a tax refund is property of the estate—*i.e.,* a contingent right to payment. However, for that contingent right to ripen into an actual right to payment, there must be monies still owing to the debtor's estate after offset. If not, there is no refund to be paid to the estate—*i.e.,* 'the tax refund did not become property of the estate,' *Luongo,* 259 F.3d at 335, and there is no interest in property to be claimed as exempt."); *In re Gould,* 389 B.R. at 124 (agreeing with *Luongo*'s analysis that where the IRS has property exercised its setoff outside of bankruptcy, there is no longer a refund which may, thereafter, become estate property.); *In re Sissine,* 432 B.R. 870, 882 (Bankr. N.D. Ga. 2010) ("Since an overpayment is not credited to the debtor until after offsets have occurred, if the IRS chooses to make such offset, there is no property interest in a debtor until the refund has been declared.") (quoting *In re Pigott,* 330 B.R. at 802).

It is undisputed that Plaintiff and Defendant owed mutual prepetition debts. The government properly intercepted Plaintiff's tax overpayment and used it to offset his consumer obligation to Defendant. Once that occurred, there were no funds remaining, and so Plaintiff was not entitled to a tax refund. Since no funds were owed to him on the petition date, the tax refund did not become estate property.

This renders Plaintiff's reliance on § 522 futile. Section 522(b) permits a debtor to "exempt (1) property under the federal exemptions contained in Section 522(d), unless State law does not so authorize, or (2) property exempt under State or local

law, or other federal law." *In re Gould*, 389 B.R. at 114 (quoting *In re Higgins*, 201 B.R. 965, 966 (9th Cir. BAP 1996)). But property cannot be exempted unless it first comes into the estate. *See, e.g., Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed. 2d 350 (1991); *In re Heintz*, 198 B.R. 581, 586 (9th Cir. BAP 1996)). Accordingly, Plaintiff's claimed exemption in the tax refund is invalid.

This conclusion limits Plaintiff's ability to employ other subsections of § 522. For example, § 522(c) provides, subject to various exceptions, that "[u]nless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case." 11 U.S.C. § 522(c). There is significant case law discussing the conflict between §§ 522(c) and 553, with the BAP recently holding that the latter controls. *In re Gould*, 401 B.R. at 427–28. But the court need not address the issue further here since Plaintiff did not have claim a valid exemption in the first place.

Further, §§ 522(g) and (h) both allow Plaintiff to exempt recoverable or avoidable property that "could have been exempted." Again, the tax refund was not exemptible because it did not become estate property on the petition date. And as set forth below, Plaintiff cannot avail himself of §§ 542 or 547's protections.

### 3. Plaintiff's § 542 Turnover Request Is Inapt

Sections 542(a) and (b) are facially inapplicable.[2] Section 542(a) applies only to property that would be subject to §§ 363 and 522. Section 363 refers to property of the estate, which the tax refund at hand never was. *See* 11 U.S.C. §§ 363(b) and (c). And Plaintiff cannot exempt the refund under § 522. Accordingly, § 542(a) is inapplicable. *See, e.g., In re Bourne*, 262 B.R. 745, 755 (Bankr. E.D. Term. 2001) ("Thus, by implication, § 542(a) addresses not only turnover of exempt property but also turnover of property of the estate.").

Section 542(b) likewise appears inapposite. "That section applies only to debts which are property of the estate, and directs turnover of such property to the Trustee, except where the debt is the proper subject of a set-off. Section 542(b) does not, however, determine the validity of a set-off. Rather, § 542(b)'s exception pertaining to set-offs only comes into play where the entity involved has a valid and property right of set-off." *In re Alexander*, 225 B.R. 145, 150 (Bankr. W.D. Ky. 1998) (internal citations omitted). The tax refund never became estate property. And it was subject to a proper prepetition setoff, thus triggering § 542(b)'s exception.

Finally, even if all this were not true, the court would still find that this is not a proper turnover action since Plaintiff disputes the funds' ownership and whether a rightful setoff took place. *See, e.g., In re Gurga*, 176 B.R. 196, 199 (9th Cir. BAP

**2.** Subject to certain exceptions, § 542(a) provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). And § 542(b), again subject to various exceptions, states that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor. 11 U.S.C. § 542(b).

1994) ("Turnover proceedings involve return of *undisputed* funds." (emphasis in original).

### 4. Section 547 Does Not Govern this Case

■ Plaintiff alleges that Defendant's prepetition setoff was an avoidable preference recoverable under § 547. Section 542's unavailability aside, courts have rejected this argument repeatedly. *See, e.g., Campos v. Wells Fargo Bank, N.A.*, 345 B.R. 678, 684 (E.D. Cal. 2005) ("The preferential payment provisions of 11 U.S.C. § 553, covering set offs, rather than those of § 547, covering "transfers," applies in this case.") (citing *Lee v. Schweiker*, 739 F.2d 870, 873 n. 4 (3d Cir. 1984) ("[W]here a setoff right is being asserted, section 553, rather than section 547, governs the creditor's rights.")). *See also In re Rehab Project, Inc.*, 238 B.R. 363, 372 (Bankr. N.D. Ohio 1999) ("[I]t is abundantly clear that when § 553 is determined to be applicable, § 547 cannot thereafter be utilized to undo its effect."). And the Bankruptcy Court for the District of Montana has stated:

A creditor may exercise its setoff remedy prior to the commencement of the case without court approval. Subject to the limitations set forth in section 553(b), the Code does not restrict a creditor from exercising its rights of setoff under applicable non-bankruptcy law prior to the commencement of the case. Setoff prior to bankruptcy, if within the terms of the Code, does not constitute a preference.

*In re Remillong*, 131 B.R. 727, 728 (Bankr. D. Mont. 1991) (quoting 4 COLLIER ON BANKRUPTCY ¶ 553.05 at pp. 523–30).

Indeed, "[s]ection 553(b), the insufficiency test, contains the 'special rules' and is, in essence a miniature preference provisions akin to § 547(c)(5)." *In re Remillong*, 131 B.R. at 728 (quoting *In re Balducci Oil Co.*, 33 B.R. 847, 852 (Bankr. D. Colo. 1983)). *See also In re Hayes*, No. 08-30978-DM, 2008 WL 5749913, at *1 n.1 (Bankr. N.D. Cal. Nov. 10, 2008) ("In general, a prepetition setoff is not avoidable as a preference under section 547. . . . A valid setoff executed within 90 days of the date of the filing of a bankruptcy petition is nonetheless protected from avoidance under section 547, except for any insufficiency. . . . Only if the court finds the setoff invalid, and further concludes that no right of setoff exists in bankruptcy, is section 547 applied.").

### 5. Plaintiff Is Not Entitled to § 362(k)(*l*) Damages

■ Finally, Plaintiff seeks attorney's fees and costs for bringing this adversary proceeding, and punitive damages for Defendant's alleged ongoing stay violation in not remanding the tax refund when asked. The court denies this request as well.

As stated above, the IRS properly exercised its nonbankruptcy law setoff rights on Defendant's behalf. The setoff was accomplished prepetition (and consequently at a time when no stay was in effect). That meant there were no funds available for a tax refund. Plaintiff no longer had an interest in the tax refund on the petition date, and no right to it ever came into the estate. The tax refund thus did not become estate property, and consequently did not fall under § 362's protections. Plaintiff cannot now manufacture a stay violation *post hoc* by demanding the disputed funds' return.[3]

---

**3.** Section 362(a)(7) is inapposite since that applies to post-petition setoff of prepetition debts. *See, e.g., In re Sexton*, 508 B.R. at 657 (citing *In re Quade*, 482 B.R. 217, 229 (Bankr.

N.D. Ill.2012)). Nor is § 362(b)(26) on point—that addresses post-petition setoff under applicable nonbankruptcy law of a prepetition income tax refund against a prepetition in-

## V. CONCLUSION

Defendant properly exercised its non-bankruptcy law setoff rights prepetition when the IRS intercepted Plaintiff's tax overpayment and applied it to the debt he owed Defendant. Defendant has also proven all of § 553's elements. And Plaintiff fails to establish compelling circumstances justifying disallowance of setoff. Consequently, Defendant's nonbankruptcy law setoff rights are recognized and enforceable in bankruptcy.

Plaintiff had standing to bring this adversary proceeding. But since nothing remained of his tax overpayment once setoff was complete, he was not entitled to a tax refund. He had no interest in the tax refund on the petition date, and thus it never became exemptible estate property. And because the tax refund was: (1) a disputed debt; and (2) not estate property subject to exemption, § 542 turnover is not an available remedy. In addition, the law is clear that where, as here, there is a valid setoff, § 553's requirements govern over § 547's. Finally, Plaintiff's request for § 362(k)(*l*) damages is denied since the setoff occurred prepetition and no right to the tax refund existed on the petition date.

Plaintiff conceded at the hearing, and the court agrees, that the Complaint cannot be saved by amendment. Accordingly, the court **grants** Defendant's motion and **dismisses** the Complaint with prejudice.

IT IS SO ORDERED.

Attachment

**Notice Recipients**

District/Off: 0974-3

Case: 17-90153-CL

User: Admin.

Form ID: pdf01

Date Created: 10/10/2017

Total: 4

**Recipients of Notice of Electronic Filing:**

aty Beth A. Clukey beth.clukey@usdoj.gov

aty Daniel Wiedecker dandrlc@debtclinic.com

TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

pla Jubilee Faasoa 800 E Bobier Dr # K6 Vista, CA 92084-3851

dft Army & Air Force Exchange Service ATTN: FA-F/R P. O. Box 65038 Dallas, TX 75265

TOTAL: 2

come tax liability. *See* 11 U.S.C. § 362(b)(26). This case does not concern either: (1) a post-petition setoff; or (2) a setoff of a tax refund against an income tax liability. The subject liability is a non-tax debt.